Matter of the Application of CAROLINE HURRY, EDWARD
    TEMPLE HURRY and WILLIAM A. BRACKENRIDGE, as
    Trustees under the Last Will and Testament of
    WILLIAM HURRY, Deceased, for the Guidance and
    Instruction of the Court as to Their Duties under
    the Will of Said Deceased.

(Supreme Court, New York Special Term, January, 1918.)

Wills — construction of — trusts — taxes — real property.

> In an action for the construction of a will *held,* that the
> entire trust fund created thereby should be treated as a single
> fund and that all taxes on and carrying charges of certain real
> estate with a valuable building thereon, which by reason of a
> change in the character of the neighborhood had greatly
> decreased both in rental and fee value, were not properly charge-
> able against the *corpus* of the trust fund but should be paid
> out of the gross income thereof from whatever source received.

MOTION by the petitioners, Caroline Hurry, Edward
Temple Hurry and William A. Brackenridge, as trus-
tees under the last will and testament of William
Hurry, deceased:

That this court determine and adjudge whether
under the terms and provisions of the will of William
Hurry, deceased, and under the intention of the testa-
tor to be derived therefrom and under all the facts
and circumstances, it is the duty of said trustees to
sell the said Sixth avenue property for the best price
obtainable therefor and out of the proceeds thereof
to pay all the expenses of said property aforesaid,
from the month of February, 1915, to the date of the
completion of said sale, thereby restoring to said
estate so much of the income as has been or may be
used for such expenses, to be distributed to the bene-
ficiaries under said trusts of said will.

That this court determine and adjudge whether

under the terms and provisions of the will of William Hurry, deceased, and under the intention of the testator to be derived therefrom, and under the facts and circumstances hereinbefore stated, whether it is the duty of said trustees to raise by mortgage from time to time on said Sixth avenue property a sufficient sum or sums to pay all the expenses of said property aforesaid from the month of February, 1915, to the present time, thereby restoring to said estate so much of the income as has been used for such expenses to be distributed to the beneficiaries under said trusts of said will, and also to pay all future expenses of said property until the rental or income therefrom is sufficient to provide for such expenses.

That this court determine and adjudge whether or not under the terms and provisions of said will of William Hurry, deceased, or under the intention of the testator to be derived therefrom and under the facts and circumstances hereinabove stated, it is the duty of the said trustees, or whether they can legally pay the necessary expenses of the said Sixth avenue real estate from the *corpus* of the trust in so far as the income from said Sixth avenue real estate has not been sufficient to pay such expenses.

On August 2, 1893, William Hurry died leaving a last will and testament which was admitted to probate by a surrogate of New York county on November 2, 1893. Included in the large amount of real and personal property possessed by him at the time of his death were the following described premises: "All those certain premises situated in the City, County and State of New York, and known as numbers 339 and 341 Sixth avenue and 105 West 21st street, and bounded and described as follows: Beginning at the northwesterly corner of Sixth avenue and Twenty-first street, running thence northerly along the west-

erly side of Sixth avenue, fifty-two feet six inches to the centre of the party wall between this property and number 343 Sixth avenue, thence westerly through the centre of said party wall and on a line in continuance thereof 85 feet, thence southerly and through the centre of a party wall between this property and number 107 West 21st street, fifty-two feet six inches to the northerly side of 21st street, and thence easterly along the northerly side of 21st street, 85 feet to the Sixth avenue, at the place of beginning, be the said several dimensions more or less.''

That by the said last will and testament the residue of his real and personal property, including the premises above described, was devised to his executors, the petitioners herein, in ten individual shares, in trust as to each of said shares, to receive the income therefrom, and after the payment of taxes, assessments, and carrying charges, as well as the expenses incidental to the execution of the trust, to pay over the remainder of the income from each share to the beneficiaries specified.

The petitioners as such executors and trustees executed and delivered to Samuel Adams and John Flanagan a lease of said premises for a term of twenty-one years to commence on July 1, 1902, for the gross rental of $20,000 per year, with the option of a further term of ten years, provided said lessees should have constructed upon said premises a building as therein provided.

Said lease was assigned to the Adams Dry Goods Company and subsequently to the O'Neill-Adams Company, which continued to occupy said premises and pay the rent therefor down to the month of February, 1915.

A substantial six story, modern fireproof building, suitable for dry goods business was erected upon the

premises by the said lessees or their assignees pursuant to the aforesaid agreement and lease.

In the year 1902 and for several years thereafter the said premises were in the center of a large and prosperous retail dry goods business section in New York city, and were worth $350,000, but since the year 1905 a gradual change of such dry goods business section took place. Nearly all of the large dry goods retail houses moved farther uptown in said city, or gave up business altogether, and the O'Neill-Adams Company was obliged to discontinue business, and vacated said premises as tenants and became financially irresponsible and for the nonpayment of rent for the month of March, 1915, and subsequent months, was dispossessed therefrom.

Since the month of February, 1915, no rent or income whatsoever has been received from the premises, although diligent effort has been made to rent the same; the unusual change of the neighborhood and business in that locality made it impossible to rent the property until September, 1915, when it was leased to the South Sixth Avenue Company, Inc., for a term of ten years from February 1, 1918, at a yearly rent of $9,000.

Up to the month of February, 1915, the petitioners, as trustees, spent about $11,030.82 for taxes, insurance and other expenses attendant upon the care of the property, which has been spent from income of the part of the residue of the estate. It appears it will be necessary to expend about $15,000, for the necessary alterations to the building under the terms of the lease which is to run from February 1, 1918, besides further sums for taxes for the second half of 1917, and for insurance and other expenses.

The balance of the principal of the residue of said estate consists of real estate of the value of $32,873.87,

some of which is unproductive, and personal property consisting of cash, bonds and mortgages of the value of about $122,145.73 and since February, 1915, it has been necessary to use all, or nearly all, the income therefrom to pay the expenses of the upkeep and maintenance of the Sixth avenue property, so no income whatever has been paid to the beneficiaries under the trusts of the residue contained in the will.

Levi S. Hulse, for petitioners and motion.

Graves, Miles & Yawger (Harmon S. Graves, of counsel), for Jean Crosby Ross and others, in favor of motion.

Algernon S. Norton, special guardian for infant parties, opposed.

GIEGERICH, J.  As I construe the will of the decedent the entire trust fund should be treated as a single fund and not made up of parts, and that all taxes on and carrying charges of the Sixth avenue property are to be paid out of the gross income of the trust fund from whatever source derived, whether realty or personalty, and are not properly chargeable against the *corpus* of the trust fund.  This is not a case of unimproved real estate which has been increasing in value, but, on the contrary, it has a valuable building standing upon it and produced a large rental until the disastrous change of the character of the neighborhood.  But this change has brought a great loss not only to the rental value, but also to the fee value, which has fallen from $350,000 to $100,000.  There is nothing in the will warranting the conclusion that the testator intended that the remaindermen, after suffering such a loss in the fee value, should also stand the loss in the rental value and make up to income out of principal such loss of rental value.  For the reasons stated

the *corpus* of the trust fund is not chargeable with the expenses of the care and maintenance of said property since the month of February, 1915, for watchmen's wages, taxes, insurance and other expenses amounting to $11,030.82, which since has been paid from the income of the other part of the residue of the estate, or with the sum of $900 for broker's commissions on procuring a lease of said premises, or with the taxes for the second half of 1917, amounting to $1,515, or with the insurance and other expenses of the said premises. All these various items should, in my view, be paid out of the gross income of the trust fund. I am of the opinion, however, that the sum of $15,000, which under the terms of the lease the trustees will be compelled to expend in making necessary alterations to the building erected on said property, should be paid out of the *corpus* of the trust fund, such alterations being apparently of permanent value to the property. Motion disposed of as indicated.

Ordered accordingly.